UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORCHARD SUPPLY HARDWARE LLC,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT USA, INC., et al.,<br><br>Defendants. | Case No.  12-cv-06361-JST<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>Re: Dkt. No. 30 |

## I. INTRODUCTION

Plaintiff Orchard Supply Hardware ("Plaintiff") brings a Complaint ("the Complaint") against Defendants Home Depot USA, Inc., ("Home Depot"), Milwaukee Electric Tool Corporation ("METCo") and Makita USA, Inc. ("Makita") for violations of Section 1of the federal Sherman Act ("Sherman Act"), violation of California's Cartwright Act, violations of California's Unfair Competition Law ("UCL"), tortious interference with existing contracts, and tortious interference with prospective economic relations.  Dkt. No. 1.  The Court has considered the papers and the arguments of the parties at oral argument held April 4, 2013.  For the reasons that follow, the Court concludes that the Complaint fails to allege sufficient facts to state a viable cause of action, and must be dismissed without prejudice.

## II. BACKGROUND

### A. Factual and Procedural Background

For the purposes of a motion to dismiss, the Court adopts the following factual allegations from Plaintiff's Complaint.

Plaintiff owns and operates a chain of all-purpose general hardware stores throughout California and is a retail competitor of Defendant Home Depot.  Complaint, ¶¶ 1 & 16.  Defendant

1   Home Depot is currently the largest, and is a dominant, seller of hardware products in the United
2   States. Id., ¶ 84. Defendants METCo and Makita are each suppliers of power tools that distribute
3   their products to consumers through retail hardware stores such as Plaintiff Orchard Supply
4   Hardware and Defendant Home Depot. Id., ¶¶ 2 & 110. Collectively, Defendants METCo and
5   Makita control between nine and 50 percent of the market share of various power tools. Id., ¶ 7.
6   Within North America, METCo and Makita are the "predominant suppliers of professional power
7   tools," which are those tools sought by tradesmen and other professional customers. Id., ¶ 2, 12,
8   122-24.

On June 7, 2012, Home Depot executive Craig Menear publicly announced that Defendant Home Depot would enter into "exclusive-supplier contracts with key suppliers, so that it would become the principal or only supplier of the single most important kind of core hardware product – professional power tools and related accessories." Id., ¶ 111. Within a week, Defendant Makita gave notice that it would stop selling power tools to Orchard. Id., ¶¶ 17, 112. Two weeks later, Defendant METCo also informed Plaintiff that it "would cease to make further sales of any of its products to Orchard." Id., ¶¶ 17, 113. Another power tool supplier, Black & Decker Dewalt ("Black & Decker"), disclosed to Plaintiff that Defendant Home Depot had also requested that Black & Decker refuse to deal with Plaintiff, but that Black & Decker had refused. Id., ¶ 114. In response, Black & Decker claims that Defendant Home Depot has lessened its purchases of Black & Decker products and had begun placing them in disadvantageous locations in its retail outlets. Id.

Plaintiff filed this Complaint on December 14, 2012. Dkt. No. 1. Defendants filed a Motion to Dismiss in February, which the Court now considers. Dkt. No. 30.

**B.  Jurisdiction**

Plaintiff's first two causes of action arise under federal law, Section 1 of the Sherman Antitrust Act. 15 U.S.C. § 1. The Court has exclusive jurisdiction over those claims pursuant to Section 4 of the Clayton Act. 15 U.S.C. § 15. Subject-matter jurisdiction is therefore proper pursuant to 28 U.S.C. § 1331. Since the remaining causes of action arise from the same "nucleus of operative fact" as the Sherman Act claims, this Court can, and hereby does, exercise

1  supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

2  **C.  Legal Standard**

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Dismissal is also proper where the complaint alleges facts that demonstrate that the complaint is barred as a matter of law. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiffs' obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) cert. denied, 132 S. Ct. 2101 (U.S. 2012). "The factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id. To survive a motion to dismiss, a pleading must allege "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. Twombly, 550 U.S. at 556.

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

/ / /

/ / /

### III. DISCUSSION

#### A. Sherman Act

Section 1 of the Sherman Act prohibits "unreasonable restraints" of trade. State Oil Co. v. Khan, 522 U.S. 3, 10 (1997). "[T]he accepted standard for testing whether a practice restrains trade in violation of § 1" is the "rule of reason." Leegin Creative Leather Products, Inc. v. PSKS, Inc., 551 U.S. 877, 885 (2007). As an alternative, a plaintiff can also allege that a restraint is one that has already been "deemed unlawful *per se*." Khan, 522 U.S. at 10. Plaintiff pursues both theories in its Complaint.

##### 1. *Per Se* Violation: Unlawful Group Boycott

An unlawful group boycott is one type of *per se* violation of Section 1. NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 134-36 (1998). In order to establish an unlawful group boycott, Plaintiff must establish, *inter alia*, the existence of a horizontal arrangement between METCo and Makita to jointly participate in the boycott. Id., 525 U.S. at 135. "The crucial question" is whether METCo and Makita's conduct "stemmed from independent decision or from an agreement, tacit or express." Theatre Enterprises, Inc. v. Paramount Film Distrib. Corp., 346 U.S. 537, 540 (1954); see also NYNEX at 136. It would not be a *per se* violation for Home Depot to seek and obtain an exclusive distributorship agreement with a provider. See id. at 136-37; see also Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761 (1984) ("[a] manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently").

Plaintiff does not argue in its Complaint or in its opposition to the motion to dismiss that Makita and METCo communicated with each other. Instead, in the parlance of antitrust law, Plaintiff argues that Defendant Home Depot formed a "hub" connecting two "spokes" -- Milwaukee and METCo -- into a horizontal arrangement. Dkt. No. 33, Opposition of Orchard Supply Hardware LLC to Defendants' Joint Motion to Dismiss its Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Opp."), 7:16. A hub-and-spoke relationship can establish a horizontal arrangement, but there still must be a "rim": an at least tacit understanding between the horizontal competitors that each would participate in the boycott. The complaint,

4

however, lacks any factual allegation that Defendants Makita or METCo had an arrangement with each other, tacit or otherwise.

Plaintiff argues that its complaint is sufficient nonetheless, and offers two cases in support.[1] Opp., 5:25 & 13:18. Both are distinguishable. In Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 187-89 (2nd Cir. 2012), the Second Circuit found a complaint sufficient where the plaintiff specifically alleged that several horizontal competitors had met and communicated with each other during a specific two-week period to establish a group boycott. In Toys "R" Us, Inc. v. F.T.C., 221 F.3d 928, 932-35 (7th Cir. 2000), there was "direct evidence of communications" between the horizontal competitors, as well as evidence that horizontal competitors agreed to participate in a boycott "on the condition that their competitors would do the same." Plaintiff's Complaint contains no allegation of any similar communication.

At the pleading stage, "when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Twombly, 550 U.S. at 557. In its opposition to the motion to dismiss (but not in the Complaint), Plaintiff argues that its complaint "support[s] a plausible inference" that Home Depot "reassured each complicit supplier that the other would likewise refuse to make sales to Orchard and other targeted competitors," and that the pled facts "strongly suggest" that "Milwaukee and Makita each agreed to stop making these sales upon being reassured by Home Depot that the other would do the same at around the same time," Opp., 2:15-17. According to Plaintiff, even though the Complaint does not allege that any such assurance was offered, it is plausible to infer that "neither Milwaukee nor Makita would have agreed to stop making sales to significant distribution channels, save upon obtaining reassurance from Home Depot that the other had likewise agreed to do so." Opp.,

---

[1] At oral argument, Plaintiff's counsel also referred the Court to Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207 (1959). In that case, the plaintiff alleged that a group of stores had reached a concerted agreement, and "defendants did not dispute these allegations." Id. at 209. Instead, the defendants sought and won a summary judgment holding that, even if some concerted agreement had been reached, it did not harm competition sufficiently to amount to an antitrust violation. Id. at 210-11. In reversing the lower courts on this point, the Supreme Court did not address the question of the facts necessary to plead a claim of a horizontal conspiracy.

7:13-15.

The pled facts are these. Home Depot, a powerful retailer, announced its interest in seeking exclusive distributorships with suppliers. Shortly thereafter, two suppliers, comprising between nine and 50 percent of the market of various power tools, agreed to establish exclusive relationships with Home Depot. Meanwhile, other suppliers, including Black & Decker, declined to do so. Plaintiff argues that Defendants METCo and Makita would have only entered into an exclusive agreement if they were assured that the other would do likewise. That only begs the question of why both were apparently willing to do so without an assurance that Black & Decker and other suppliers would participate.

In discussing the kind of parallel conduct allegations that "raise a reasonable expectation that discovery will reveal evidence of illegal agreement" the Supreme Court has suggested that a complaint should allege "parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties". Twombly, at 556, n.4 (quoting 6 Areeda & Hovenkamp, Antitrust Law ¶ 1425, at 167–185 (2d ed. 2003)). Here, there is nothing to suggest that Defendants METCo's and Makita's actions were "not merely parallel conduct that could just as well be independent action," Twombly, *supra*, 550 U.S. at 557, or an "obviously reasonable [response] to a common external stimulus or business problem." 6 Areeda & Hovenkamp, Antitrust Law ¶ 1425 at 182 (3rd. ed. 2010). Even assuming, as the Court must, that METCo and Makita are the predominant suppliers of "professional power tools," this does not indicate that the two announcements probably would not have been independent responses to the common stimulus of Home Depot announcing its desire to seek exclusive distributorship relationships.

This Court does not hold, as Defendants appeared to suggest at oral argument, that a complaint alleging an unlawful group boycott must allege specific communications amongst conspirators, and provide evidentiary support for that allegation. Circumstantial evidence can establish an antitrust conspiracy at trial or at summary judgment. See, e.g., Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 764-65 (1983). Certainly more is not required at the pleading stage.

However, in similar cases, courts have required considerably more than the allegations in the Complaint before inferring illegal agreement from parallel conduct. For example, in Starr v. Sony BMG Music Entm't, 592 F.3d 314, 323-27 (2nd Cir. 2010), plaintiffs buttressed their allegation of concerted agreement by pointing to numerous surrounding circumstances indicating that it would contravene each defendant's self-interest to act as it had in the absence of an agreement with its competitors. See also In re Text Messaging Antitrust Litig., 630 F.3d 622, 627-29 (7th Cir. 2010) (affirming the sufficiency of a complaint that had alleged "'parallel plus' behavior" such as unprecedented pricing changes made at the same time by multiple competitors for no discernible reason); In re High-Tech Employee Antitrust Litig., 856 F. Supp. 2d 1103, 1115-22 (N.D. Cal. 2012) (refusing to dismiss a complaint that had alleged "much more than parallel conduct"). Without suggesting that the aforementioned cases establish the minimum requirements for a plausible conspiracy claim, the Court concludes that the current Complaint less resembles those cases than it does the many post-Twombly cases in which dismissal was proper. See, e.g., Mayor & City Council of Baltimore, Md. v. Citigroup, Inc., 709 F.3d 129, 137-38 (2nd Cir. 2013); Burtch v. Milberg Factors, Inc., 662 F.3d 212, 226-30 (3rd Cir. 2011) cert. denied, 132 S. Ct. 1861 (U.S. 2012); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 326-36 (3rd Cir. 2010); MedioStream, Inc. v. Microsoft Corp., 869 F. Supp. 2d 1095, 1103-05 (N.D. Cal. 2012); In re Late Fee & Over-Limit Fee Litig., 528 F. Supp. 2d 953, 962-65 (N.D. Cal. 2007) (all dismissing complaints which alleged only parallel conduct that was consistent with rational business behavior).

Since Plaintiff's complaint has "not nudged [its] claims across the line from conceivable to plausible," it has not alleged sufficient facts to plead an unlawful group boycott. Twombly, 550 U.S. at 570.

**2.     "Rule of Reason" Violation**

As an alternative to its claim of a *per se* violation, Plaintiff argues that the facts support a viable Section 1 claim under the rule of reason. Under the rule of reason, a court must determine whether a restraint on trade constitutes an "unreasonable restraint on competition. . . . taking into account "specific information about the relevant business" and "the restraint's history, nature, and

7

effect." Leegin, 551 U.S. at 885 (2007) (internal citations omitted). As with a *per se* violation, Plaintiff must allege some sort of specific "contract, combination or conspiracy." Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1046 (9th Cir. 2008). To the extent the complaint rests upon the allegation of a horizontal agreement between Defendants Makita and METCo, it is insufficient for the same reasons discussed above. But Plaintiff has adequately pled facts suggesting the existence of two vertical agreements (between Home Depot and MetCO and between Home Depot and Milwaukee) which could be unreasonable restraints of trade under the rule of reason. Complaint, ¶ 4. In order to plead a viable claim of a rule of reason violation, Plaintiff must allege sufficient facts to support its claim that these agreements harmed competition with a relevant geographic and product market. Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1044 (9th Cir. 2008).

"[S]ince the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." Id., 513 F.3d at 1045. Plaintiff has adequately pled a relevant product market. Complaint, ¶ 119-21. However, Plaintiff's definition of the relevant geographic market -- "various regional markets in California and Oregon where Orchard and other retail sellers of power tools compete against one another" -- is vague and conclusory. Complaint, ¶¶ 95 & 126. While detailed factual findings at the pleading stage are not required, Plaintiff must provide enough facts "to enable the opposing party to defend itself effectively." Starr, 652 F.3d at 1216. Information about the reach of this market is not exclusively within the Defendants' possession. Plaintiff should plead the geographic range of the relevant market with greater specificity.

Within the properly defined relevant market, Plaintiff must show "an injury to competition, rather than just an injury to plaintiff's business." Sicor, Ltd. v. Cetus Corp., 51 F.3d 848, 854 (9th Cir. 1995). "In order successfully to allege injury to competition . . . a claimant must, at a minimum, sketch the outline of the antitrust violation with allegations of supporting factual detail." Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 507-08 (9th Cir. 1989). Plaintiff argues that it has alleged "the very kind of harm to competition that lies at the heart of a rule-of-reason offense" by alleging that Home Depot will be able to charge higher prices and

deprive consumers of choice as a result of its agreements. Complaint, ¶¶ 20 & 166; Opp., 20:16. However, the Ninth Circuit has very recently held that "[a]llegations that an agreement has the effect of reducing consumers' choices or increasing prices to consumers does not sufficiently allege an injury to competition." Brantley v. NBC Universal, Inc., 675 F.3d 1192, 1202 (9th Cir. 2012) cert. denied, 133 S. Ct. 573 (U.S. 2012). The Brantley court indicated that plaintiffs could allege a viable injury to competition by alleging that an agreement facilitated horizontal collusion or foreclosed competitors from entering into or competing in a market. Id. at 1198. Allegations of this sort would sufficiently plead harm to competition. However, where, as here, the only alleged injury to competition is increased prices and reduced consumer choice, dismissal is proper. Id. at 1204.[2]

**B.   Cartwright Act**

The Cartwright Act, California's antitrust law, was "modeled after the Sherman Act," and therefore the Court's analysis "mirrors the analysis under federal law." County of Tuolumne v. Sonora Community Hosp., 236 F.3d 1148, 1160 (9th Cir. 2001). Plaintiff argues that the Cartwright Act might permit it to allege a group boycott even in the absence of any arrangement between horizontal competitors. Opp., 22:20-23:10. But in both cases cited by Plaintiff for that proposition, the California Court of Appeal explicitly based its reasoning on federal law and precedents. Redwood Theatres, Inc. v. Festival Enters., Inc., 200 Cal. App. 3d 687, 699 (1988); Bert G. Gianelli Distrib. Co. v. Beck & Co., 172 Cal. App. 3d 1020, 1044 (1985) (disapproved of on other grounds by Dore v. Arnold Worldwide, Inc., 39 Cal. 4th 384, 394, n.2 (2006)). The U.S. Supreme Court has, subsequent to those cases, clarified that an unlawful group boycott claim must involve some horizontal arrangement. Discon, 525 U.S. at 138. This Court does not believe that Plaintiff can succeed in establishing a group boycott that constitutes a *per se* Cartwright Act violation on facts that are insufficient to state a violation of the Sherman Act.

Therefore, the Court finds that the Complaint fails to state sufficient facts to establish a

---

[2] To avoid this result, Plaintiff's counsel, at oral argument, again cited Klor's, 359 U.S. at 207. But Klor's was not a "rule of reason" case. Rather, it was the case that "set forth the rule" that unlawful group boycotts are a *per se* violation of Section 1. Discon, 525 U.S. at 128. Therefore, Klor's does not absolve a "rule of reason" claimant of its obligation to plead harm to competition.

viable Cartwright Act claim for the same reasons it has failed to state a viable violation of the Sherman Act.

### C. Unfair Competition Law

For similar reasons, the Complaint fails to plead a violation of California's Unfair Competition Law ("UCL"), which prohibits both "unlawful" and "unfair" business practices. Cal. Bus. & Prof. Code. §§ 17200 eq seq. Plaintiff can only assert an "unlawful" practice insofar as it can assert violations of other laws. See AT & T Mobility LLC v. AU Optronics Corp., 707 F.3d 1106, 1107, n.1 (9th Cir. 2013). Moreover, acts permissible under antitrust laws "cannot be deemed 'unfair' under the unfair competition law," at least not where a plaintiff alleges that the acts are unfair for the same reason it argues that they violate antitrust law. Chavez v. Whirlpool Corp., 93 Cal. App. 4th 363, 375 (2001). In its opposition, Plaintiff does not argue that the pled facts support a viable UCL claim except insofar as they support viable Sherman and Cartwright Act violations. Opp., 25:5-7.

Therefore, the Complaint fails to state sufficient facts to establish a viable UCL claim for the same reasons it has failed to state a viable violation of the Sherman and Cartwright Acts.

### D. Tortious Interference with Existing Contracts

To state a viable claim for tortious interference with existing contracts, a plaintiff must establish an "underlying enforceable contract" evidencing a "formally cemented economic relationship." Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners, 52 Cal. App. 4th 867, 879 (1997) (quoting Della Penna v. Toyota Motor Sales USA, Inc., 11 Cal.4th 376, 392 (1995). The Complaint fails to allege facts sufficient to show that it had any such enforceable contracts with its existing customers or with Defendants METCo and Makita. Instead, it states only that Plaintiff had "regular trading relationships," "contractual dealings," and "master sales contract/ancillary contracts." Complaint, ¶¶ 203-205. Plaintiff must plead sufficient factual allegations about the terms of its enforceable contracts, such that Defendants are sufficiently on notice to defend themselves from the claim of causing the breach or disruption of those contracts.

### E. Tortious Interference with Prospective Economic Relations

In contrast to the tort of interference with existing contracts, a plaintiff need not show a

specific enforceable contract in order to assert a claim for tortious interference with prospective economic relations. See Bed, Bath & Beyond, 52 Cal. App. 4th at 879. However, Plaintiff must show that the defendant's conduct is "wrongful apart from the interference itself." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1153-54 (2003). Since the Complaint hinges its allegations of wrongful conduct on the claimed antitrust violations, this allegation is insufficient for the same reasons discussed above.

## IV. CONCLUSION

The Complaint fails to allege sufficient facts to state a claim for the legal claims cited therein, the Court hereby GRANTS Defendants' Motion to Dismiss.

Since it is not clear that the complaint could not be saved by amendment, dismissal is WITHOUT PREJUDICE. See Eminence Capital, 316 F.3d at 1052. Plaintiff shall file an amended complaint within thirty days of this order. Failure to do so may result in dismissal with prejudice.

**IT IS SO ORDERED**.

Dated: April 11, 2013

_____
JON S. TIGAR
United States District Judge