1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    ROXANE A. POLIDORA (CA Bar No. 135972)
2   roxane.polidora@pillsburylaw.com
    ANDREW D. LANPHERE (CA Bar No. 191479)
3   andrew.lanphere@pillsburylaw.com
    LINDSAY A. LUTZ (CA Bar No. 254442)
4   lindsay.lutz@pillsburylaw.com
    Four Embarcadero Center, 22nd Floor
5   San Francisco, CA  94111
    Telephone: (415) 983-1000
6   Facsimile: (415) 983-1200

7   Attorneys for Defendant
    HOME DEPOT U.S.A., INC.
8
    [additional parties and counsel
9   listed in signature block]

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  ORCHARD SUPPLY HARDWARE LLC,          Case No.: 12-CV-6361 JST

16                      Plaintiff,         **DEFENDANTS' JOINT NOTICE OF
                                           MOTION AND MOTION TO
17          vs.                            DISMISS SECOND AMENDED
                                           COMPLAINT**
18  HOME DEPOT USA, INC., MILWAUKEE
    ELECTRIC TOOL CORPORATION, and        Date: August 15, 2013
19  MAKITA USA, INC.,                      Time:  2:00 p.m.
                                           Courtroom: 9
20                      Defendants.        Judge:  Hon. Jon S. Tigar

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION AND STATEMENT OF THE ISSUES ......................................1

II.     FACTUAL BACKGROUND ................................................................................2

    A.   Procedural History .................................................................................2

    B.   Factual Allegations ................................................................................3

III.    LEGAL STANDARD .........................................................................................5

II.     ARGUMENT ......................................................................................................6

    A.   Plaintiff fails to state a claim under the Sherman Act. ..............................6

        1.   Plaintiff alleges no new facts regarding an agreement among METCo and Makita, and thus still fails to state a *per se* unlawful group boycott claim..........................................................6

        2.   Plaintiff fails to state a claim under the rule of reason. ...................10

            a.   Plaintiff failed to allege the separate effect of the alleged Home Depot-METCo and Home Depot-Makita vertical agreements.................................................10

            b.   The SAC fails to allege Defendants had market power in the relevant markets........................................14

            c.   The SAC fails to allege antitrust injury.............................14

    B.   The claims under the Cartwright Act likewise fail.......................................17

    C.   Plaintiff fails to allege an unlawful or unfair practice under Section 17200. .................................................................................................17

    D.   Plaintiff does not sufficiently allege interference with any existing contracts...............................................................................................18

    E.   The FAC fails to state a claim for tortious interference with prospective economic advantage. ..............................................................21

    F.   Plaintiffs' advertising claims should be dismissed......................................23

    G.   Leave to amend should not be granted. .......................................................25

IV.     CONCLUSION .................................................................................................25

1

**TABLE OF AUTHORITIES**

2

<u>Page(s))</u>

3

<u>Cases</u>

4
*A.H. Cox & Co. v. Star Mach. Co.,*
  653 F.2d 1302 (9th Cir. 1981) .................................................................. 6, 15
5

6
*Anderson News LLC v. Am. Media, Inc.,*
  680 F.3d 162 (2d Cir. 2012) ............................................................................ 8

7
*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
  7 Cal. 4th 503 (Cal. 1994) ............................................................................ 19
8

9
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................ 5

10
*Asia Inv. Co. v. Borowski,*
  133 Cal. App. 3d 832 (1982) ........................................................................ 22
11

12
*AT&T Mobility LLC v. AU Optronics Corp.,*
  707 F.3d 1106 (9th Cir. 2013) ...................................................................... 18

13
*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................. 5, 6, 7, 9
14

15
*Belton v. Comcast Cable Holdings, LLC,*
  151 Cal. App. 4th 1224 (Cal. Ct. App. 2007) .............................................. 18

16
*Bio-Med. Research, Ltd. v. Thane Int'l, Inc.,*
  249 F. App'x 539 (9th Cir. 2007) ................................................................. 22
17

18
*Brantley v. NBC Universal, Inc.,*
  675 F.3d 1192 (9th Cir. 2012) ...................................................................... 16

19
*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
  429 U.S. 477 (1977) ...................................................................................... 15
20

21
*Cascades Computer Innovation LLC v. RPX Corp.,*
  No. 12-CV-01143 YGR, 2013 WL 316023 (N.D. Cal. Jan. 24, 2013) ..................... 6

22
*Chavez v. Whirlpool Corp.,*
  93 Cal. App. 4th 363 (Cal. Ct. App. 2001) .................................................. 18
23

24
*Cnty. of Tuolumne v. Sonora Cmty. Hosp.,*
  236 F.3d 1148 (9th Cir. 2001) ...................................................................... 17

25
*Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.,*
  611 F.3d 495 (9th Cir. 2010) ........................................................................ 15
26

27
*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
  11 Cal. 4th 376 (Cal. 1995) .......................................................................... 21

28

*Dickson v. Microsoft Corp.*
   309 F.3d 193 (4th Cir. 2002) ................................................................. 8, 11, 12, 13

*DocMagic, Inc. v. Ellie Mae, Inc.,*
   745 F. Supp. 2d 1119 (N.D. Cal. 2010) ........................................................ 19, 22

*EcoDisc Tech. v. DVD Format/Logo Licensing Corp.,*
   711 F. Supp. 2d 1074 (C.D. Cal. 2010) ............................................................. 24

*Epicor Software Corp. v. Alt. Tech. Solutions, Inc.,*
   No. SACV 13-00448-CJC (RNBx), 2013 WL 2382262 (C.D. Cal.
   May 9, 2013) .............................................................................................. 24

*Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.,*
   95 Cal. App. 4th 1249 (Cal. Ct. App. 2002) ...................................................... 23

*Guinn v. Mount Carmel Health,*
   No. 2:09cv226, 2012 WL 628519 (S.D. Ohio Feb. 27, 2012) .......................... 16

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,*
   602 F.3d 237 (3d Cir. 2010) ........................................................................ 8

*In re Charles Schwab Corp. Sec. Litig.,*
   257 F.R.D. 534 (N.D. Cal. 2009) ................................................................ 20

*In re Elec. Books Antitrust Litig.,*
   549 F. Supp. 2d 671 (S.D.N.Y. 2012) .......................................................... 8

*In re Webkinz Antitrust Litigation,*
   694 F.Supp.2d 987 (N.D. Cal. 2010) ............................................................ 16

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.,*
   865 F.Supp.2d 1002 (C.D. Cal. 2011) ...................................................... 12, 14

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde,*
   466 U.S. 2 (1984) ...................................................................................... 16

*Kendall v. Visa, U.S.A., Inc.*
   518 F.3d 1042  (9th Cir. 2008) ..................................................................... 5, 6

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (Cal. 2003) .......................................................... 18, 21, 22, 23

*Kotteakos v. United States,*
   328 U.S. 750 (1946) .................................................................................... 8

*Leatherman Tool Grp., Inc. v. Coast Cutlery Co.,*
   823 F. Supp. 2d 1150 (D. Or. 2011) ............................................................. 25

*Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n,*
   884 F.2d 504 (9th Cir. 1989) ............................................................. 6, 15, 16

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.,*
   271 F.3d 825 (9th Cir. 2001) ...................................................................... 23

*Masco Contractor Serv. East, Inc. v. Beals*,
    279 F.Supp.2d 699 (E.D. Va. 2003) ........................................................ 11

*Newcal Indus., Inc. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008) ........................................................ 12, 14

*Nexsales Corp. v. Salebuild, Inc.*,
    Case No. C–11–3915 EMC, 2012 WL 216260 (N.D. Cal. Jan. 24,
    2012) ........................................................................................................ 21

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
    202 F.3d 1088 (9th Cir. 2000) ............................................................... 6

*NYNEX Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998) .................................................................... passim

*Ott v. Home Savings & Loan Ass'n*,
    256 F.2d 643 ........................................................................................ 20

*PM Group, Inc. v. Stewart*,
    154 Cal. App. 4th 55 (Cal. Ct. App. 2007) ........................................... 19

*PMC v. Saban Entm't*,
    45 Cal. App. 4th 579 (Cal. Ct. App. 1996) ................................. 18, 19, 21

*Pool Water Prod. v. Olin Corp.*,
    258 F.3d 1024 (9th Cir. 2001) ............................................................... 15

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
    615 F.3d 412 (5th Cir. 2010) ................................................................. 8

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (Cal. 1998) ............................................................ 18, 21

*Ralph C. Wilson Indus., Inc. v. Am. Broad. Cos., Inc.*,
    598 F. Supp. 694 (N.D. Cal. 1984), *aff'd sub nom., Ralph C. Wilson*
    *Indus., Inc. v. Chronicle Broad. Co.*, 794 F.2d 1359 (9th Cir. 1986)...................... 12

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
    Case No. 3:12-cv-05847-JST , Slip Op. (C.D. Cal. June 25, 2013) ........................ 8

*Ron Tonkin Gran Turismo v. Fiat Distribs., Inc.*,
    637 F.2d 1376 (9th Cir. 1981) ............................................................... 15

*Roth v. Garcia Marquez*,
    942 F.2d 617 (9th Cir. 1981) ................................................................. 20

*Roth v. Rhodes*,
    25 Cal. App. 4th 530 (Cal. Ct. App. 1995) ........................................... 22

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ................................................................. 6

*Sambreel Holdings LLC v. Facebook, Inc.*,
    No. 12cv668–CAB (KSC), 2012 WL 5995240 (S.D. Cal. Nov. 29,
    2012) ........................................................................................................ 15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ................................................................ 24

*Sicor, Ltd. v. Cetus Corp.*,
    51 F.3d 848 (9th Cir. 1995) .................................................................... 15

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ....................................................... 23

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ................................................................ 24

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010) ................................................................... 10

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ................................................................ 25

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ................................................................ 22

*Target Corp. v. LCH Pavement Consultants, LLC.*,
    No. 12-1912 (JNE/JJK), 2013 WL 2470148 (D. Minn. June 7, 2013) ..................... 8

*Toys "R" Us, Inc. v. F.T.C.*,
    221 F.3d 928 (7th Cir. 2000) ................................................................... 8

*TPS Utilicom Serv., Inc. v. AT & T Corp.*,
    223 F. Supp. 2d 1089 (C.D. Cal. 2002) .................................................. 22

*U.S. Healthcare, Inc. v. Healthsource, Inc.*,
    986 F.2d 589 (1st Cir. 1993) .................................................................. 11

*U.S. v. Colgate & Co.*,
    250 U.S. 300 (1919) ................................................................................. 5

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ................................................................................. 5

*Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (Cal. Ct. App. 1996) ...................................... 21, 22

**Statutes and Codes**

California Business & Professions Code
    Section 16720 *et seq* ............................................................................... 3
    Section 17200 .................................................................................... 3, 17
    Section 17500 ............................................................................ 3, 23, 24

United States Code
Title 15, Section 1 ................................................................ 2, 5, 6, 11
Title 15, Section 1125(a)(1)(B) ........................................................ 3, 23

## Rules and Regulations

Federal Rules of Civil Procedure
Rule 10 ..................................................................................... 20S
Rule 12(b)(6) ............................................................................... 1

## Other Authorities

CAL. ANTITRUST AND UNFAIR COMPETITION LAW REVISED EDITION, § 17:04
(2012) ....................................................................................... 24

1    **NOTICE OF MOTION AND MOTION TO DISMISS**

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3         PLEASE TAKE NOTICE that on August 15, 2013 at 2:00 p.m. or as soon thereafter

4    as the matter may be heard, in Courtroom 9, 19th floor, at 450 Golden Gate Avenue, San

5    Francisco, California, before the Honorable Jon S. Tigar, Defendants Milwaukee Electric

6    Tool Corporation ("METCo"), Makita U.S.A., Inc. ("Makita"), and Home Depot U.S.A.,

7    Inc. ("Home Depot") (collectively, "Defendants") will and hereby do move the Court,

8    pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing

9    the Second Amended Complaint ("SAC") filed by Orchard Supply Hardware ("Plaintiff" or

10   "Orchard") on May 24, 2013.  This motion is based upon this Notice of Motion; the

11   following Memorandum of Points and Authorities; the complete files in this action;

12   argument of counsel; and such other matters as the Court may consider.

13       **MEMORANDUM OF POINTS AND AUTHORITIES**

14   **I.     INTRODUCTION AND STATEMENT OF THE ISSUES**

15       Orchard's SAC adds some paragraphs, exhibits and claims, but fails to cure the

16   defects identified by the Court in dismissing the original complaint.  Accordingly, the

17   SAC's first seven claims should be dismissed for a second time, and the newly-added

18   eighth and ninth claims should be dismissed as well.

19       Orchard's *per se* group boycott claim under the Sherman Act (Claim 1) fails

20   because Orchard did not allege facts from which one could plausibly infer that METCo's

21   and Makita's decisions not to sell to Orchard were the result of a horizontal agreement.  As

22   the Court previously found, absent such allegations, Orchard cannot state a *per se* claim.

23       Orchard's rule of reason claim under the Sherman Act (Claim 2) fails because, in

24   the absence of a horizontal agreement, Orchard needed to allege facts demonstrating the

25   *separate* effect on competition of the alleged Home Depot-METCo and Home Depot-

26   Makita agreements to establish one or both of them were unreasonable restraints of trade,

27   but Orchard failed to do so.  Orchard also failed to allege that METCo and Makita

28   (collectively or separately) had market power in any of the alleged relevant markets, a

1   prerequisite of any rule of reason claim.  Finally, Orchard failed to allege facts showing that

2   the Home Depot-METCo and Home Depot-Makita agreements (collectively or separately)

3   harmed competition in the relevant markets, and therefore failed to allege antitrust injury.

4          Orchard's Cartwright Act and Unfair Competition Law claims (Claims 3, 4, and 5)

5   are based on the same allegations as the Sherman Act claims and fail for the same reasons.

6          Orchard's claims for tortious interference with contractual relations and prospective

7   economic advantage (Claims 6 and 7) are also deficient. Orchard identifies two sets of

8   alleged contractual relations: (a) agreements between Orchard and some unidentified

9   customers; and (b) agreements between Orchard and METCo and Orchard and Makita,

10   respectively.  As to the first, Orchard fails to sufficiently allege any formally cemented

11   contractual relationship with any customers.  As to the second, Orchard fails to sufficiently

12   allege that any obligation under the METCo and Makita contracts was breached.  With

13   respect to the interference with prospective economic advantage claim, without allegations

14   of independently wrongful conduct, which are absent from the SAC, a supplier's

15   termination or non-renewal of a retailer is insufficient to state a tortious interference with

16   prospective economic advantage claim.

17          Finally, Orchard's new false advertising claims (Claims 8 and 9) are likewise

18   deficient.  Orchard failed to plead its claim under California's False Advertising Law with

19   the required particularity, and failed to plead the facts demonstrating an effect on interstate

20   commerce required to state a Lanham Act claim.

21          Further leave to amend should not be given.  Orchard was given a full and fair

22   opportunity to cure the complaint's defects, but failed to do so.  Accordingly, the SAC's

23   first seven claims should be dismissed without leave to amend.

24   **II.**        **FACTUAL BACKGROUND**

25         **A.**      **Procedural History**

26          Orchard filed its original Complaint in this action on or about December 14, 2012,

27   alleging seven claims against all defendants:  *per se* and rule of reason claims under the

28   Sherman Act, 15 U.S.C. § 1, and California Cartwright Act, Cal. Bus. & Prof. Code §

1   16720 *et seq.*; violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code

2   § 17200; and common law claims for tortious interference with existing contracts and

3   tortious interference with prospective economic relations.   Defendants moved to dismiss the

4   Complaint and, on April 12, 2013, the Court granted the motion as to all claims, with leave

5   to amend.   (Order Granting Motion to Dismiss Without Prejudice ("Order"), Dkt. No. 42.)

6   On May 13, Orchard filed its First Amended Complaint, which purported to re-plead the

7   same seven claims as the original complaint.   (Dkt. No. 45.)   Orchard then filed a Motion

8   for Leave to File Proposed Second Amended Complaint just two days later, on May 15.

9   (Dkt. No. 48.)   Defendants stipulated to the filing of the SAC, and it was filed on May 24.

10  (Dkt. No. 53.)   The SAC adds two new claims, against Home Depot only, for false

11  advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and California's False

12  Advertising Law, Cal. Bus. & Prof. Code § 17500.

13       **B.       Factual Allegations**

14       As with the original complaint, the SAC's allegations as to the factual matters

15  critical to this motion—the alignment of the parties, the alleged agreement to boycott

16  Orchard, and the alleged effect of Orchard's termination by METCo and Makita—are

17  easily summarized.   Orchard alleges that it owns and operates a chain of all-purpose general

18  hardware stores throughout California, as well as two stores in Oregon (SAC ¶ 13), and

19  that, in this capacity, it is a retail competitor of Home Depot, including in the sale of power

20  tools to professional users.   (SAC ¶ 16.)   METCo and Makita are each suppliers of power

21  tools that distribute their products to consumers (including "professional" users) by, *inter*

22  *alia*, supplying hardware stores and other retailers, such as Home Depot, Target, Walmart,

23  and Ace Hardware.   (*Id.* ¶¶ 21, 35; Pl.'s Notice of Errata, Dkt. No. 5.)   In other words,

24  among the Defendants, METCo and Makita are direct, *horizontal* competitors at the same

25  level of distribution (supplier-supplier), and they are each *vertically* aligned with various

26  retailers (supplier-distributor), such as Home Depot and formerly Orchard.

27       Prior to June 2012, Orchard was a retailer of METCo and Makita power tools,

28  pursuant to Orchard master contracts.   (SAC ¶ 136.)   This allegedly changed following

1    Home Depot's June 2012 public announcement of a new strategy "to lock down the supply

2    of key professional power tools in order to counter emerging competitive threats to its

3    market positions." (*Id.* ¶ 46.)  Within a couple weeks after Home Depot's announcement,

4    Makita gave notice that it would stop selling to Orchard.  (*Id.* ¶ 140.)  Less than two weeks

5    after that, METCo allegedly also informed Orchard that it would "cease to make further

6    sales of any of its products to Orchard."  (*Id.* ¶ 142.)  Orchard also alleges Home Depot had

7    requested that Black & Decker not deal with Orchard, but Black & Decker declined.  (*Id.*

8    ¶ 144.)  Orchard also claims to have learned that "[a]t around the same time," METCo

9    notified Amazon that it would no longer sell to Amazon, and Makita notified Amazon that

10   it would cease selling its "most popular products" to Amazon.  (*Id.* ¶ 145.)

11         As in the original complaint, Orchard does not allege that Makita and METCo

12   communicated with each other and jointly agreed to withdraw their products from Orchard.

13   Instead, Orchard alleges, "[o]n information and belief, Home Depot made clear by express

14   and/or implied statements to Makita and Milwaukee that it was conferring with both of

15   them to ensure that neither would sell their products or allow their products to be sold to the

16   targeted competitors – Amazon, Orchard and possibly others" (SAC ¶ 43.)  From this

17   speculative allegation on "information and belief," Orchard surmises that "Makita and

18   Milwaukee each acted on the understanding that the other had also agreed at Home Depot's

19   behest to cut off the targeted competitors."  (*Id.* ¶ 50.)

20         Orchard, however, makes *no non-conclusory allegations* whatsoever of coordination

21   *between* METCo and Makita to discontinue sales to Orchard, whether in response to Home

22   Depot's alleged request or otherwise.  Rather, Orchard asserts in a conclusory fashion that

23   each defendant joined an overarching conspiracy to boycott Orchard, and it claims that, as a

24   result of this "concerted withholding" of power tools, Orchard's ability to compete for the

25   sale of professional power tools has been undermined, causing it to suffer a reduction in

26   sales.  (*Id.* ¶¶ 38, 85.)

27

28

1    **III.      LEGAL STANDARD**

2    To survive a motion to dismiss, a complaint must allege *facts* that, if accepted as

3    true, would state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4    555-56 (2007). Labels or conclusions, or recitation of the elements of a cause of action,

5    without supporting, factual allegations, are insufficient to state a claim. *Id.* at 555; *Ashcroft*

6    *v. Iqbal*, 556 U.S. 662, 678 (2009). Only *factual* allegations may be considered when

7    evaluating whether plaintiff has alleged a plausible claim. *See Kendall v. Visa, U.S.A., Inc.*

8    518 F.3d 1042, 1047 (9th Cir. 2008) (an antitrust plaintiff must allege "evidentiary facts

9    which, if true, will prove" the elements of a Section 1 claim).

10    In *Twombly*, the Supreme Court emphasized that, because Section 1 of the Sherman

11    Act prohibits only those restraints of trade that are affected by contract, combination, or

12    conspiracy, "the crucial question is whether the challenged anticompetitive conduct stems

13    from independent decision or from agreement, tacit or express." 550 U.S. at 553 (internal

14    citation omitted). Parallel conduct among defendants, by itself, is ambiguous, "consistent

15    with conspiracy, but just as much in line with a wide swath of rational and competitive

16    business strategy unilaterally prompted by common perceptions of the market." *Id.* at 554.

17    Accordingly, parallel conduct alone is insufficient to support an antitrust conspiracy claim,

18    and "a conclusory allegation of agreement at some unidentified point does not supply facts

19    adequate to show illegality." *Id.* at 557.

20    Application of this rule is particularly important in cases like this one that involve

21    changes in distribution practices in competitive industries, which the Supreme Court and

22    the Ninth Circuit have recognized is a process "close to the heart of the competitive process

23    that the antitrust laws seek to encourage." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 137

24    (1998). "[A]s a general matter, the Sherman Act 'does not restrict the long recognized right

25    of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his

26    own independent discretion as to parties with whom he will deal.'" *Verizon Commc'ns Inc.*

27    *v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (quoting *U.S. v. Colgate*

28    *& Co.*, 250 U.S. 300, 307 (1919)). The potential for antitrust laws to be misused to serve

1   the private interests of a terminated retailer are high, given that "[i]t is widely recognized . .

2   . that in most circumstances dealer terminations or substitutions do not adversely affect

3   competition in the market." *A.H. Cox & Co. v. Star Mach. Co.*, 653 F.2d 1302, 1306-07

4   (9th Cir. 1981).

5   **II.     ARGUMENT**

6   **A.     Plaintiff fails to state a claim under the Sherman Act.**

7   To state a Section 1 claim, a plaintiff must allege: "not just ultimate facts (such as a

8   conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or

9   conspiracy among two or more persons or distinct business entities; (2) by which the

10   persons or entities intended to harm or restrain trade or commerce . . . ; (3) which actually

11   injures competition." *Kendall*, 518 F.3d at 1047 (citing *Les Shockley Racing Inc. v. Nat'l

12   *Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir. 1989)).  As with any other Section 1 claim,

13   pleading a "group boycott" claim requires a complaint to contain "enough factual matter

14   (taken as true) to suggest that an agreement was made." *Cascades Computer Innovation*

15   *LLC v. RPX Corp.*, No. 12-CV-01143 YGR, 2013 WL 316023, at *5 (N.D. Cal. Jan. 24,

16   2013) (quoting *Twombly* and dismissing group boycott claim).

17       1.     <u>Plaintiff alleges no new facts regarding an agreement among METCo and</u>

18           <u>Makita, and thus still fails to state a *per se* unlawful group boycott claim.</u>

19   The Supreme Court has held, specifically with respect to group boycott claims, that

20   "antitrust law does not permit the application of the *per se* rule . . . in the absence of a

21   horizontal agreement . . ." *Discon*, 525 U.S. at 138.[1]  Even in situations involving "a threat

22   made by a single powerful firm" to multiple suppliers, a "horizontal agreement *among*

23

24   --------------------

25   [1]  *See also Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088. 1092 (9th Cir.
     2000) ("the *per se* rule . . . should be limited to cases 'involving horizontal agreements

26   among direct competitors.'" (quoting *Discon*, 525 U.S. at 135)); *Rutman Wine Co. v. E. &*
     *J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987) (finding that a wine manufacturer's

27   agreement to switch its distributors could not constitute a *per se* group boycott of
     terminated distributor where wine manufacturer and new distributor were not

28   competitors).

1  *those threatened*" is required to state a *per se* group boycott claim.  *Id.* at 135 (emphasis

2  added).  Thus, as the Court held in dismissing the original complaint:

3
>         In order to establish an unlawful group boycott, Plaintiff
>         must establish, *inter alia*, the existence of a horizontal

4
>         arrangement between METCo and Makita to jointly
>         participate in the boycott.  The crucial question is whether

5
>         METCo and Makita's conduct stemmed from independent
>         decision or from an agreement, tacit or express.  It would not

6
>         be a *per se* violation for Home Depot to seek and obtain an
>         exclusive distributorship agreement with a provider.

7

8  (Order at 4:11-17 (internal quotations and citations omitted).)

9          The basic facts alleged in the SAC are no different than those found wanting by the

10  Court in the original complaint.  (Order at 6:2-9 (summarizing allegations of original

11  complaint).)  As in the original complaint, Orchard alleges that Home Depot publicly

12  announced its intent to seek exclusive distributorship agreements with suppliers.  (*Compare*

13  Order at 6:2-3 *with* SAC ¶ 139 (alleging that, on June 7, 2012, Home Depot publicly

14  announced at a trade convention that it would "lock down the supply of professional power

15  tools.").)[2]  After this public announcement, METCo and Makita agreed to establish

16  exclusive distributorship relationships with Home Depot, while Black & Decker and other

17  suppliers did not.  (*Compare* Order at 6:3-6 *with* SAC ¶¶ 45, 140-44.)   As the Court noted

18  in the Order, these facts are insufficient to state a *per se* claim:

19  _____

20  [2]  Orchard alleges that, in addition to Home Depot's public announcement of its intent to
         seek exclusive distributor relationships with its suppliers, at some unidentified point "[i]n

21       the spring or early summer of 2012," unnamed "key officers" of Home Depot
         "approached" similarly unnamed "key officers" of METCo, Makita and Black & Decker

22       at an unspecified location(s).  (SAC ¶ 129.)  At these meetings, Home Depot allegedly
         requested privately what it had previously requested publicly:  that the supplier cease

23       selling its products to Orchard, Amazon "*and possibly* other of its direct competitors."
         (*Id.* (emphasis added).)  Home Depot also, allegedly, "*stated or implied* to each supplier

24       that it was conferring about the same matter with the others."  (*Id.* (emphasis added).)
         These vague and conclusory allegations fail to satisfy *Twombly*'s requirement of pleading

25       the "specific time, place or person involved in the alleged conspiracies."  550 U.S. at 591
         n.10.  Moreover, since Home Depot had already announced *publicly* that it was seeking

26       exclusive distributorship agreements with its key suppliers, the allegation that Home
         Depot also "stated or implied" to its suppliers that it was seeking such agreements was

27       telling them nothing they did not already know, and certainly is not evidence of an
         agreement between METCo and Makita.

28

1    [T]here is nothing to suggest that Defendants METCo's and
     Makita's actions were "not merely parallel conduct that could
2    just as well be independent action," <u>Twombly</u>, *supra*, 550
     U.S. at 557, or an "obviously reasonable [response] to a
3    common external stimulus or business problem." 6 Areeda
     & Hovenkamp, <u>Antitrust Law</u> ¶ 1425 at 182 (3d ed. 2010).
4    Even assuming, as the Court must, that METCo and Makita
     are the predominant suppliers of "professional power tools,"
5    this does not indicate that the two announcements probably
     would not have been independent responses to the common
6    stimulus of Home Depot announcing its desire to seek
     exclusive distributor relationships.

7

8    (Order at 6:15-22.)

9         This conclusion is unaffected by the SAC's apparent attempt to allege a hub-and-

10   spoke conspiracy – in this instance with Home Depot acting as the "hub" and METCo and

11   Makita as the "spokes."  To state a *per se* group boycott claim based on a hub-and-spoke

12   conspiracy, the SAC still must allege facts sufficient to infer that the spokes acted pursuant

13   to a horizontal agreement – a "rim" – as opposed to acting in parallel.  (*See* Order at 4:21-

14   5:11 (citing *Anderson News LLC v. Am. Media, Inc.*, 680 F.3d 162, 187-89 (2d Cir. 2012)

15   and *Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 932-35 (7th Cir. 2000)).)[3]  The SAC simply

16   _____

17   [3]  *See also Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, Case No. 3:12-cv-05847-
         JST, Slip. Op., Order Granting Motions to Dismiss, at 10:17-19 (C.D. Cal. June 25, 2013)
18       ("to be actionable, a hub-and-spoke conspiracy requires a 'rim,' which requires some kind
         of agreement or understanding between and among the spokes that the other spokes
19       would cooperate in the conspiracy"); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l,
         Inc.*, 602 F.3d 237, 255 (3d Cir. 2010) (hub-and-spoke theory of conspiracy was not
20       satisfied where "[t]he amended complaint states only in a conclusory manner that all of
         the defendants . . . conspired and knew about the alleged plan to maintain Dentsply's
21       market position" and thus "the 'rim' connecting the various 'spokes' is missing"); 
         *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203–04 (4th Cir. 2002)  (allegations that
22       Microsoft had similar agreements with each of its customers failed to state a claim under
         the antitrust laws because the plaintiff did not allege a "rim" to the wheel, i.e., a
23       conspiracy among the customers; the Supreme Court was "clear" in *Kotteakos v. United
         States*, 328 U.S. 750 (1946) that "a wheel without a rim is not a single conspiracy");
24       *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 420 (5th Cir. 2010)
         (affirming dismissal where no allegation of "an agreement among retailers" to implement
25       manufacturer's policy; "there is no wheel and therefore no hub-and-spoke conspiracy . .
         ."); *Target Corp. v. LCH Pavement Consultants, LLC*., No. 12-1912 (JNE/JJK), 2013 WL
26       2470148, at *7 (D. Minn. June 7, 2013) (hub-and-spoke claim dismissed where plaintiff
         "failed to allege sufficient facts from which the Court could infer the existence of a
27       horizontal agreement among the Defendant [spokes] . . . Not only are there no explicit
         allegations of horizontal agreement, but the allegations are not placed in a context that
28                                                                              (continued…)

1   fails to allege *any* of the types of facts required to establish a plausible "rim" between

2   METCo and Makita :  (1) that METCo and Makita conferred with each other about their

3   response to Home Depot requests for exclusive distributorship arrangements; (2) that

4   METCo or Makita communicated with each other through Home Depot by conditioning

5   their agreement on the other also agreeing; or (3) that agreeing to establish exclusive

6   dealership relationships with Home Depot would be against METCo's and Makita's self-

7   interest.  (Order at 5:3-11, 7:1-11 (discussing factual allegations required to establish

8   "rim").)[4]

9        Orchard argues (SAC ¶ 42) that all that is necessary to establish the rim between

10   METCo and Makita is for Home Depot to have told them that it was conferring with its

11   other suppliers – which, of course, Home Depot *publicly* announced it was doing in June

12   2012.  Orchard alleges this knowledge of what Home Depot was doing was sufficient to

13   establish an agreement between METCo and Makita, since METCo and Makita allegedly

14   "*must have reckoned* that one of the other [suppliers] had agreed to participate in the

15   arrangement" and due to each of their "extraordinary dependence on continued good

16   relations with Home Depot" elected to agree to an exclusive distributorship arrangement

17   with Home Depot.  *Id.* ¶¶ 48-49 (emphasis added).  Speculation about what a defendant has

18   "reason to know" or "must have reckoned" is not a well-pleaded factual allegation.  Rather,

19   this is a classic example of rational business behavior:  two competitors, in response to a

20   common business problem, making the same decision based on their perceived economic

21   self-interest.  As *Twombly* and this Court's prior Order teach, such allegations are

22   _____

(…continued)
23   suggests one."); *compare In re Elec. Books Antitrust Litig.*, 549 F. Supp. 2d 671, 682
     (S.D.N.Y. 2012) (denying motion to dismiss in hub and spoke case due to allegations of
24   "specific conversations" among direct competitors that raised an inference that they
     "agreed among themselves to adopt a joint strategy.").

25   [4]  The Court noted that the agreement between Makita and METCo can be "tacit" (Order at
     4:15), and allegations regarding the agreement can rely on "circumstantial evidence" from
26   which the agreement may be inferred (*id.* at 6:25-26).  Nonetheless, Orchard is required
     to allege facts sufficient to raise a plausible inference of concerted action, not simply facts
27   showing parallel conduct by competitors in response to common business stimuli.  *See*
     *Twombly*, 550 U.S. at 556, n.4.

28

1   insufficient as a matter of law. *See Twombly*, 550 U.S. at 554; (Order at 7:11-20 (holding

2   allegations of "parallel conduct that was consistent with rational business behavior" are

3   insufficient to state a *per se* Sherman Act claim)).

4          Nor has Orchard alleged facts "pointing to numerous surrounding circumstances

5   indicating that it would contravene each defendant's self-interest to act as it had in the

6   absence of an agreement with its competitors." Order, at 7:4-6 (citing *Starr v. Sony BMG*

7   *Music Entm't*, 592 F.3d 314, 323-27 (2d Cir. 2010). While Orchard makes a conclusory

8   allegation that an exclusive distribution arrangement with Home Depot was "against

9   [METCo's and Makita's] own interest" (SAC ¶¶ 50, 137), it fails to allege facts supporting

10  this conclusion. Indeed, Orchard's conclusion is *contrary* to its factual allegations that

11  Home Depot is the largest and most important seller of professional tools (*id.* at p. 1:2-6);

12  METCo and Makita each have "extraordinary" and "excessive" dependence on their

13  relationships with Home Depot (*id.* ¶¶ 49, 51); and that Home Depot threatened to "reduce

14  purchases of its products and display fewer of them in its stores" if suppliers did not cease

15  selling to Orchard (*id.* ¶ 45). Orchard does not allege that Makita or METCo was similarly

16  dependent upon Orchard or sold as substantial a share of their power tools to Orchard.

17  Under these circumstances, it was obviously consistent with METCo's and Makita's

18  respective economic self-interest to agree to Home Depot's alleged request not to sell to

19  Orchard in order to preserve their more important business relationships with Home Depot.

20          2.      Plaintiff fails to state a claim under the rule of reason

21                  a.      Plaintiff failed to allege the separate effect of the alleged Home

22                          Depot-METCo and Home Depot-Makita vertical agreements.

23          Orchard's rule of reason claim, as alleged, remains a group boycott predicated upon

24  a horizontal agreement between METCo and Makita. (*See* SAC at 47:6-8 (second cause of

25  action for "unlawful group boycott"), ¶¶ 203-219. ) As such, the rule of reason claim fails

26  with the *per se* claim due to Orchard's failure to sufficiently allege facts supporting the

27  existence of an agreement between METCo and Makita. (*See* Order at 8:3-5 (discussing

28  original complaint's rule of reason claim and noting that "[t]o the extent the complaint rests

---

DEFENDANTS' MOTION TO DISMISS                        - 10 -                    Case No.: 12-CV-6361 JST
PLAINTIFF'S SECOND AMENDED COMPLAINT

1   upon the allegation of horizontal agreement between Defendants Makita and METCo, it is

2   insufficient for the same reasons discussed above [with respect to the *per se* claim].").)  The

3   Court acknowledged that Orchard could alternatively attempt to assert a rule of reason

4   claim that the two alleged vertical agreements (Home Depot-METCo and Home Depot-

5   Makita) violate Section 1.  (Order at 8:5-10.)  Such a claim, premised on parallel vertical

6   agreements without a horizontal agreement between competitors, would not be a "group

7   boycott" claim,[5] and in any event this is not what Orchard alleges in the SAC.  But even if

8   the Court were to evaluate the rule of reason claim under this theory, the SAC's factual

9   allegations are insufficient to state a claim.

10       The SAC lacks factual allegations sufficient to establish a horizontal agreement

11   between METCo and Makita, and thus the alleged vertical exclusive distributorship

12   agreements (Home Depot-METCo and Home Depot-Makita) must be analyzed *separately*

13   to determine if they violate Section 1 under a rule of reason analysis.  *See Dickson*,

14   309 F.3d at 211.  In *Dickson*, the plaintiff alleged a rimless hub and spoke conspiracy

15   involving parallel agreements between Microsoft and Compaq and Microsoft and Dell.  The

16   Fourth Circuit held that, because the plaintiff failed to allege a "rim" between Compaq and

17   Dell, allegations regarding the anticompetitive effect of each agreement needed to be

18   considered separately in evaluating whether a claim had been stated under the rule of

19   reason:  "to state a viable § 1 claim, [plaintiff] was required to allege facts which, if proven

20   true, would demonstrate that Compaq's or Dell's individual agreements with Microsoft

21   were likely to result in an anticompetitive effect."  309 F.3d at 211.  Thus, absent a "rim"

22   between METCo and Makita, Orchard may not base a rule of reason claim on the aggregate

23

24

25

26   ―――――――――

27   [5] *See U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 594 (1st Cir. 1993) ("a
      purely vertical arrangement, by which (for example) a supplier or dealer makes an
28      agreement exclusively to supply or serve a manufacturer, is not a group boycott").

1   effect of the Home Depot-METCo and Home Depot-Makita agreements, but must instead

2   allege facts establishing each agreement, on its own, unreasonably restrains trade.[6]  *See id.*

3          The SAC is devoid of any allegations regarding the separate anticompetitive effect

4   of the Home Depot-METCo and Home Depot-Makita agreements.  To the contrary, all of

5   the SAC's factual allegations concern the *combined* effect of those agreements, which are

6   insufficient as a matter of law to state a Sherman Act claim as to either agreement.

7          For example, to state a rule of reason claim "plaintiff must allege both that a

8   'relevant market' exists and that the defendant has power within that market."  *Newcal*

9   *Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008); *see also In re*

10  *Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 865 F.Supp.2d 1002, 1029 (C.D. Cal.

11  2011).  But *all* of Orchard's market power-related allegations are focused on METCo's and

12  Makita's *combined* market power.  (*See, e.g.*, SAC ¶ 69 ("Milwaukee and Makita

13  collectively make a substantial percentage of the principal kinds of power tools sold and

14  used in the United States"); *id.* ¶ 70 (allegations of METCo's and Makita's combined

15  market share); *id.* ¶ 204 ("These two suppliers jointly account for 50% to 31% of overall

16  sales of each kind of the Seven Categories of Power Tools.").  These allegations fail to

17  establish that METCo *or* Makita individually had market power in any of the alleged

18  relevant markets, and thus fail to state a rule of reason claim as to either the Home Depot-

19  METCo or Home Depot-Makita agreements.[7]

20  _____

21  [6] *See also Masco Contractor Servs. East, Inc. v. Beals*, 279 F. Supp. 2d 699, 705 (E.D. Va.
    2003) ("[I]n the absence of any allegations of agreements between 'spokes,' a single

22  'rimless wheel' conspiracy must be evaluated as several individual conspiracies.")
    (quoting *Dickson*, 309 F.3d at 203-04); *Columbus Drywall & Insulation, Inc. v. Masco*

23  *Corp.*, No. 1:04-CV-3066-JEC, 2009 WL 856306, at *18 (N.D. Ga. Feb. 9, 2009) ("[I]f
    plaintiffs are not able to establish an agreement between the manufacturers, then their

24  vertical conspiracy claims necessarily fail for lack of any evidence that each separate
    vertical conspiracy had an anti-competitive effect on the market"); *Stand Energy Corp. v.*

25  *Columbia Gas Transmission Corp.*, 2008 WL 3891219, at *17 (S.D. W.Va. Aug. 19,
    2008) ("Each of the vertical conspiracies [in a rimless wheel] is a separate conspiracy and

26  each must be demonstrated to result in an unreasonable restraint on trade").

27  [7] *See Dickson*, 309 F.3d at 211 ("Without alleging facts demonstrating Compaq's or Dell's
    power or share in the PC market, [plaintiff] was unable to make…a showing [that

28  Compaq's and Dell's separate agreements with Microsoft resulted in an anticompetitive
    (continued…)

1      Similarly, to state a claim under the rule of reason Orchard must allege facts

2  demonstrating antitrust injury resulting *separately* from the two agreements.  *See Dickson*,

3  309 F.3d at 207 (showing antitrust injury requires plaintiff to "allege[] the likelihood of a

4  substantial anti-competitive harm caused by the two . . . agreements at issue (considered

5  individually) . . . ").  Yet, again, the SAC's allegations regarding harm to competition focus

6  entirely on the *combined* effect of the Home Depot-METCo and Home Depot-Makita

7  agreements; the SAC nowhere alleges the *separate* effect of either agreement on

8  competitors or competition.  (*See* SAC ¶ 33 ("If a hardware seller is deprived of power

9  tools made by Makita *and* Milwaukee, it will be greatly hobbled or impeded . . .")

10  (emphasis added)), ¶ 71 ("Many customers and most professional customers will cease to

11  shop for power tools at a store that does not carry any power tools made by Milwaukee *and*

12  Makita . . ." (emphasis added)), ¶ 74 ("a hardware seller that lacks *two* of the three major

13  brands will find itself at an enormous, insuperable disadvantage . . .") (emphasis added).)

14  Absent factual allegations showing the harm to competition caused separately by each

15  alleged agreement, Orchard cannot adequately allege antitrust injury resulting from either

16  agreement.[8]

17      This is not a new issue.  Defendants discussed this point in their reply in support of

18  the motion to dismiss the original complaint, after Orchard argued in its opposition that the

19  separate Home Depot-METCo and Home Depot-Makita agreements violated the rule of

20  reason.  (Dkt. No. 36 at 10:5-11:8.)  This makes it all the more striking that Orchard did not

21  even attempt to allege the facts necessary to state a rule of reason claim as to the alleged

22  _____

(…continued)

23  effect]"); *Ralph C. Wilson Indus., Inc. v. Am. Broad. Cos., Inc.*, 598 F. Supp. 694, 704
    n.10 (N.D. Cal. 1984), *aff'd sub nom.*, *Ralph C. Wilson Indus., Inc. v. Chronicle Broad.*

24  *Co.*, 794 F.2d 1359 (9th Cir. 1986) ("Absent a conspiracy among defendants, [a] plaintiff
    may not aggregate the respective market shares of individual defendants to establish

25  market power.  If a plaintiff could do so, it could merely sue all its competitors in a given
    market, aggregate their shares, and thus unfailingly establish market power.")

26  [8] The allegations specific to Orchard's rule of reason claim, paragraphs 203-219, likewise
    all speak to the *combined* effect of the alleged agreements.  (*E.g.*, SAC ¶ 204 (allegations

27  regarding METCo's and Makita's *combined* manufacture of power tools), ¶¶  209-211
    (allegations regarding defendants' "concerted withholding").)

28

1    Home Depot-METCo or Home Depot-Makita agreements in the absence of a horizontal

2    agreement.

3              b.    The SAC fails to allege Defendants had market power in the relevant

4                    markets.

5          As noted above, Orchard must both allege the relevant market(s) *and* "allege that

6    the defendant has 'market power' within that market" to state a rule of reason claim.  *See In*

7    *re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 865 F.Supp.2d at 1029 (citing

8    Newcal, 513 F.3d at 1044).  Here, the SAC purports to allege more than 70 relevant product

9    and geographic market combinations.  (SAC ¶ 162 (alleging relevant markets exist for nine

10   product markets (or product clusters) in each of eight alleged geographic markets).)  But the

11   SAC fails to allege METCo and Makita, either combined or individually, had market power

12   in *any* of these relevant markets.  The only allegations regarding METCo's and Makita's

13   market power focus on their percentage share of power tool sales *in the United States as a*

14   *whole*.  (*E.g.,* SAC ¶ 70 (table alleging "Milwaukee and Makita's combined market share of

15   overall sales in the United States.").)  METCo's and Makita's alleged nationwide market

16   share does not establish they had market power in any product market in any of the eight

17   geographic markets alleged in the SAC.  Absent market power allegations focused on the

18   alleged relevant markets actually at issue here, Orchard cannot establish harm to

19   competition in those markets and its rule of reason claim fails.  *See In re Wellpoint*, 865

20   F.Supp.2d at 1029 ("In addition to identifying a relevant market, a plaintiff must allege that

21   the defendant has 'market power' within that market—otherwise the defendant's restraint

22   on trade would not have a substantial anticompetitive effect.").

23              c.    The SAC fails to allege antitrust injury.

24         Orchard must also allege that the challenged agreements have resulted in harm to

25   competition, not just harm to Orchard or other competitors.  *Discon*, 525 U.S. at 139 (a

26   "simple allegation of harm to [plaintiff] does not automatically show injury to

27   competition").  As the Ninth Circuit held in an analogous dealer termination context:

28

1
> [B]ecause there was no tenable *per se* boycott theory,
> '[plaintiffs] must evince a *substantially adverse effect* on

2
> competition in the relevant market to support a viable theory.
> [Plaintiffs] point to the alleged injury to their businesses, but

3
> fail to provide any evidence that the 'effect upon competition
> in the marketplace is substantially adverse.'

4

5  *Ron Tonkin Gran Turismo v. Fiat Distribs., Inc.*, 637 F.2d 1376, 1388 (9th Cir. 1981)

6  (emphasis added; citation omitted).

7          The rationale for this requirement is clear: the antitrust laws are intended to protect

8  competition, not individual competitors.  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429

9  U.S. 477, 488 (1977).  Accordingly, a plaintiff asserting claims under the Sherman Act

10  must plead and prove "an injury to *competition*, rather than just an injury to plaintiff's

11  business."  *Sicor, Ltd. v. Cetus Corp.*, 51 F.3d 848, 854 (9th Cir. 1995) (emphasis in

12  original; citations omitted).  And, as the Ninth Circuit has reasoned, dealer terminations are

13  "widely recognized" to "not adversely affect competition in the market" and this remains

14  true whether or not the manufacturer's change in distribution occurred at the urging of

15  another distributor or retailer.  *Star Mach. Co.*, 653 F.2d at 1306-07.

16          Like the original complaint, the SAC alleges harm to Orchard and other

17  *competitors*.  (*See* SAC ¶ 164-65, 171 (alleging that Orchard and other competitors have

18  been "restricted and prevented" from competing with Home Depot).)  These allegations, if

19  accepted as true, are insufficient to establish harm to *competition* in the relevant markets of

20  the type necessary to state an antitrust claim.  *See, e.g., Discon,* 525 U.S. at 139 (dismissing

21  "vertical" boycott claim in the presence of other "actual or potential competitors"; the

22  "simple allegation of harm to [plaintiff] does not automatically show injury to

23  competition").[9]  Rather, "[t]o sufficiently allege harm to competition, a plaintiff must put

24  _____

25  [9] *See Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 502 (9th Cir.
    2010) (Section 1 plaintiff must allege facts demonstrating that defendants' conduct

26  "actually causes injury to competition, beyond the impact on the claimant" (citation
    omitted)); *Les Shockley Racing*, 884 F.2d at 508 (allegation of "market exclusion and

27  resulting loss of income" held insufficient to establish antitrust injury; "removal of one or
    a few competitors need not equate with injury to competition"); *Pool Water Prod. v. Olin*

28  (continued…)

1   forth factual allegations plausibly suggesting that there has been an adverse effect on prices,

2   output or quality of goods in the relevant market as a result of the challenged actions."

3   *Guinn v. Mount Carmel Health,* No. 2:09-cv-226, 2012 WL 628519, at *4 (S.D. Ohio Feb.

4   27, 2012) (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 31 (1984).).

5        Here, there are no allegations of reduced output or quality of goods in the alleged

6   relevant markets.  With respect to price, Orchard alleges in a conclusory fashion that

7   "consumers and professional customers" have paid higher prices and been deprived of

8   competition on price . . ." (SAC ¶ 35(4).)  This allegation is insufficient to establish

9   antitrust injury for two reasons.  First, a conclusory allegation of price effects is insufficient

10  to allege antitrust injury.  Rather, Orchard must allege *facts* sufficient to establish an actual

11  effect on prices in the relevant markets.[10]  Second, Orchard does not allege that it competes

12  with Home Depot on price, but rather on "superior brick-and-mortar retailing practices."

13  (SAC ¶ 35(3).)  Thus, Orchard does not allege that prices have been affected by METCo's

14  and Makita's agreements not to sell to Orchard.  (*See* SAC ¶ 35(2) ("Home Depot has

15  avoided price competition *from Amazon, Lowe's, Menards and others* when making sales in

16  the affected markets"); ¶ 171 ("By Defendants' conduct, *Amazon, Lowe's and Menards*

17  have been prevented from increasing price competition in the affected markets . . .").  Thus,

18  Orchard has not alleged that the agreements that allegedly harmed Orchard, by which

19  METCo and Makita allegedly agreed not to sell to Orchard, had any effect on price.

20       Finally, although the Court has suggested that antitrust injury could be established

21  with allegations showing that Home Depot's alleged agreements with METCo and Makita

22

23  (…continued)
    *Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001) ("A decrease in one competitor's market
24  share, however, affects competitors, not competition."); *Sambreel Holdings LLC v.
    Facebook, Inc.*, No. 12cv668–CAB (KSC), 2012 WL 5995240, at *7 (S.D. Cal. Nov. 29,
25  2012) (finding allegations that the plaintiff had been damaged "in its business and
    property by lost revenue, lost customer contracts, damaged customer relationships, and
26  lost users" were insufficient to establish an injury to competition).

27  [10] *See Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989)
    (holding factual allegations required to demonstrate injury to competition); *In re Webkinz
    Antitrust Litigation*, 694 F.Supp.2d 987, 997 (N.D. Cal. 2010) (same).

28

1  "foreclosed competitors from entering into or competing in a market," (Order at 9:5-7

2  (citing *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012))), the SAC

3  fails to allege such market foreclosure.  As in the original complaint, Orchard goes to great

4  lengths in the SAC to allege the existence of a vibrant and dynamically competitive retail

5  marketplace for power tools, in which consumers purchasing power tools in California have

6  a plethora of purchasing options.  (SAC ¶¶ 89-121).  These competitive options include

7  brick and mortar stores ranging from "home improvement centers" or "big-box" retailers

8  like Home Depot (*id.* ¶¶ 94-105); to large general retailers (*id.* ¶ 110); to conventional, mid-

9  sized hardware stores such as Orchard (*id.* ¶ 92);  to local hardware stores who are members

10  of the "Do-It-Best," "True Value Hardware" or "Ace Hardware" wholesale cooperatives

11  numbering in the thousands (*id.* ¶¶ 107-08); and now, to the more recent entry of online

12  retailers, such as Amazon, Walmart and Costco. (*Id.* ¶¶ 116-121.)  The SAC thus fails to

13  establish that competitors are foreclosed from entering or competing in the relevant markets

14  as a result of the alleged Home Depot-METCo or Home Depot-Makita agreements.

15      **B.      The claims under the Cartwright Act likewise fail.**

16      As stated by the Court in its Order, the Cartwright Act "was 'modeled after the

17  Sherman Act,' and therefore the Court's analysis 'mirrors the analysis under federal law.'"

18  (Order, at 9:12-14 (quoting *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160

19  (9th Cir. 2001)).  The Court rejected Plaintiff's argument that it could establish a group

20  boycott "even in the absence of any arrangement between horizontal competitors" (*id.* at

21  9:15-16), ruling that Plaintiff could not establish a Cartwright Act group boycott violation

22  based on facts insufficient to state such a claim under the Sherman Act.  (*Id.* at 9:22-24.)

23  Therefore, the Cartwright Act claims should be dismissed for the same reasons as the

24  Sherman Act claims.

25      **C.      Plaintiff fails to allege an unlawful or unfair practice under Section**

26          **17200.**

27      Orchard also alleges that Defendants committed unlawful and unfair business

28  practices under Section 17200, the Unfair Competition Law ("UCL"), which prohibits "any

1    unlawful, unfair or fraudulent business act."  Cal. Bus. & Prof. § 17200.  The unlawful

2    practices prong of this statute "borrows violations of other laws and treats them as unlawful

3    practices," such that an unlawful practice can only be satisfied if a violation of other laws

4    has been alleged.  *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1233

5    (Cal. Ct. App. 2007); *see also* Order, at 10:6-7 (citing *AT&T Mobility LLC v. AU Optronics

6    Corp.*, 707 F.3d 1106, 1107, n.1 (9th Cir. 2013)).  Because Orchard cannot state a claim

7    under other laws for Defendants' "coordinated withholding of supplies" (SAC ¶ 225) as

8    described above, the unlawful practices claim must also fail.  Further, "acts permissible

9    under antitrust laws 'cannot be deemed "unfair" under the unfair competition law,' at least

10   not where a plaintiff alleges that the acts are unfair for the same reason it argues they

11   violate antitrust law."  Order, at 10 (quoting *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th

12   363, 375 (Cal. Ct. App. 2001)).  Since Plaintiff's UCL claim is expressly predicated on

13   Defendants' alleged violations of the Sherman and Cartwright Acts (*see* SAC ¶ 225), unfair

14   business practices claim fails as well.

15        **D.      Plaintiff does not sufficiently allege interference with any existing**

16                **contracts.**

17        To allege a cause of action for tortious interference with contract, a plaintiff must

18   plead: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of

19   the contract; (3) defendant's intentional acts designed to induce breach or disruption of the

20   contractual relationship; (4) actual breach or disruption of the contractual relationship; and

21   (5) resulting damage.  *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (Cal.

22   1998) (citation omitted).  As its name suggests, a claim for tortious interference with

23   contract "protects an *existing, formally cemented* economic relationship," and thus "requires

24   an underlying *enforceable* contract."  *PMC v. Saban Entm't*, 45 Cal. App. 4th 579, 601

25   (Cal. Ct. App. 1996) (emphasis in original), *overruled on other grounds by Korea Supply

26   Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (Cal. 2003).

27        Orchard bases this claim on two different categories of "contractual relations":  (1)

28   those with its "former regular customers" and (2) those with Makita and METCo.  (SAC ¶¶

1   229-235).  The allegations regarding Orchard's contracts with "regular customers" are

2   merely that the customers stopped making "any purchases" or "regular purchases" at

3   Orchard. (*Id.* ¶ 229).  Orchard admits that it does not have "executory contracts" with these

4   customers; rather, it "maintained ongoing business dealings" with them.  (*Id.* ¶ 230.)  This

5   plainly falls short of the requirement that the economic relationship be formally cemented

6   in the form of an underlying enforceable contract, and as a result the claim regarding

7   disruption as to former regular customers fails.  *See PMC*, 45 Cal. App. 4th at 601; *see also*

8   *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1143 (N.D. Cal. 2010) (dismissing

9   claim for failure to plead existing contracts where complaint suggested that "interactions

10   with customers consisted of discrete transactions, rather than long-term contracts").

11         Orchard also makes allegations against Home Depot premised upon the purported

12   interference with Orchard's alleged form contracts with Makita and METCo, the Orchard

13   Supply Hardware Corporation Universal Terms and Conditions ("Orchard UTC"). [11]  (SAC,

14   at Ex. 4.)  Orchard alleges that "Home Depot has impaired, interfered with, and wrongly

15   induced the termination of the master sales contract/ancillary contracts between Orchard

16   and Makita and the master sales contract/ancillary contracts [between] Orchard and

17   Milwaukee."  (*Id.* ¶ 235.)  Orchard does *not* allege that Makita or METCo had any general

18   obligation to sell power tools to Orchard under the Orchard UTC.[12]

19         Instead, Orchard alleges interference with one section of the Orchard UTC—Section

20   7.1.  Orchard alleges, "Section 7.1 of this master contract required each supplier to continue

21   _____

22   [11] METCo and Makita understand that this allegation is not made against them, for a party
       to a contract cannot tortiously interfere with its own contract.  *See PM Group, Inc. v.*

23   *Stewart*, 154 Cal. App. 4th 55, 65 (Cal. Ct. App. 2007) (citing *Applied Equip. Corp. v.*
       *Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (Cal. 1994)).

24
25   [12] Nor could Orchard so argue.  (*See id.*, Ex. 4, at Section 2.1 ("The execution of the UTC
       shall not give rise to any commitment on the part of OSH to purchase any Merchandise,
       except as may be expressly set forth in another Vendor Agreement.  In the absence of

26   such other Vendor Agreement, a commitment to purchase Merchandise shall arise only at
       such times as OSH issues a Purchase Order to Seller for specified quantities of

27   Merchandise, and OSH obligation to purchase Merchandise shall be limited to the
       quantities contained in Purchase Orders issued by it.")

28

1   selling parts and accessories to Orchard for a ten-year period after it stopped selling any

2   given power tool to it, save where it no longer sold the products in question." (*Id.* ¶ 136.)

3   But the Orchard UTC, attached to the SAC, refers only to parts, not accessories. (SAC, Ex.

4   4.) Section 7.1 states as follows:

5       7.1 <u>Parts</u>. Seller shall sell to OSH any and all parts shown on Merchandise parts
        lists referenced or included in any Vendor Agreement applicable to the Merchandise
6       (if any) for a period of at least ten (10) years after the date such Merchandise is last
        produced by Seller for OSH . . .
7

8   (*Id.*) When a contract is attached to the complaint, the contract is part of the pleading for all

9   purposes, and it supersedes any conflicting allegations in the complaint. Fed. R. Civ. Proc.

10  10; *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1981) ("when the allegations

11  of the complaint are refuted by an attached document, the Court need not accept the

12  allegations as being true") (citing *Ott v. Home Savings & Loan Ass'n*, 256 F.2d 643, 646 n.

13  1 (9th Cir. 1958)). Therefore, the Court should disregard all allegations regarding any

14  obligation of Makita or METCo to supply accessories to Orchard.

15      Further, Section 7.1 states that the obligation to provide parts is only for "parts

16  shown on Merchandise parts lists referenced or included in any Vendor Agreement

17  applicable to the Merchandise." (SAC, Ex. 4.) Orchard does not identify any Merchandise

18  parts lists or Vendor Agreements that include parts. As a result, Orchard has failed to plead

19  any contractual obligation of METCo or Makita to supply parts to Orchard under the

20  contracts. *See In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 552 (N.D. Cal.

21  2009) (dismissing intentional interference with contractual relations claim for failing to

22  properly plead the circumstances of the contract).

23      Nor does Orchard sufficiently allege a breach of Section 7.1. Orchard fails to allege

24  that it even attempted to order parts from METCo or Makita under Section 7.1, much less

25  allege that any such order was declined, after METCo and Makita stopped supplying power

26  tools. Orchard does allege that Orchard has been unable to obtain parts or accessories from

27  distributors, (SAC ¶¶ 141, 143), but Section 7.1 does not include any requirement that the

28  supplier allow distributors to sell parts to Orchard. Orchard also fails to allege that it would

1    have been eligible to buy parts under its contract with either METCo or Makita.  In order to

2    state a claim for tortious interference of a contract, the breach must be of an *enforceable*

3    contract.  *PMC*, 45 Cal. App. 4th at 601.  Orchard fails to allege that the contracts were

4    enforceable; in other words, Orchard fails to allege that it was not in breach of the contract,

5    for instance due to a failure to pay money owed to Makita and/or METCo.

6         Further, Orchard fails to plead that Home Depot had knowledge of the Orchard

7    UTC with Makita or METCo or that Home Depot was aware of any ongoing obligation of

8    Makita or METCo to provide parts to Orchard, such that its alleged actions were intended

9    to induce a breach.  *See Quelimane*, 19 Cal. 4th at 55 (to state a cause of action for

10    intentional interference with contractual relations, plaintiff must plead defendant's

11    knowledge of the contract); *Nexsales Corp. v. Salebuild, Inc.*, Case No. C–11–3915 EMC,

12    2012 WL 216260, at *4 (N.D. Cal. Jan. 24, 2012) (granting motion to dismiss because,

13    *inter alia*, failure to allege "how Defendant would have known of the contract").

14        **E.**      **The FAC fails to state a claim for tortious interference with prospective**

15                **economic advantage.**

16         In order to state a claim for tortious interference with prospective economic

17    advantage ("TIPEA"), plaintiffs must plead "(1) an economic relationship between the

18    plaintiff and some third party, with the probability of future economic benefit to the

19    plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part

20    of the defendant designed to disrupt the relationship; (4) actual disruption of the

21    relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the

22    defendant."  *Korea Supply*, 29 Cal. 4th at 1153.  The intentional acts designed to disrupt the

23    relationship must be "'wrongful by some legal measure other than the fact of interference

24    itself.'"  *Id.* at 1153 (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th

25    376, 393 (Cal. 1995)).

26         To satisfy the first requirement of pleading an economic relationship, plaintiff must

27    demonstrate "the existence of a *specific* economic relationship" between itself and an

28    identifiable third party that contains the probability of future economic benefit.  *Westside*

1    *Ctr. Assoc. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 525 (Cal. Ct. App. 1996)

2    (emphasis in original).  A party cannot maintain a claim where it has alleged that the

3    "existing relationship [is] with . . . speculative 'future [customers].'"  *Roth v. Rhodes*, 25

4    Cal. App. 4th 530, 546 (Cal. Ct. App. 1995) (holding podiatrist's allegations of loss of

5    "future patients" was speculative).  In other words, to establish a cause of action for TIPEA,

6    a plaintiff cannot rely on an economic relationship that is purely hypothetical.  *See Korea*

7    *Supply*, 29 Cal. 4th at 1164 (TIPEA claim does not protect against the "speculative

8    expectation that a potentially beneficial situation will arise"); *Westside Ctr. Assoc.*, 42 Cal.

9    App. 4th at 526 (no liability for "disrupting a relationship which has yet to arise"); *Asia Inv.*

10   *Co. v. Borowski*, 133 Cal. App. 3d 832, 841 (1982) (no valid claim where real estate

11   developer's only "business relationship" was with a class of as yet unknown potential

12   purchasers).

13          Here, Orchard relies on nothing more than the conclusory allegation that Defendants

14   interfered with the "prospective" relationship between itself and "prospective customers

15   who would otherwise make substantial and recurring purchases of professional power tools

16   and other hardware products from its stores."  (SAC ¶ 239.)  Notably, Orchard does not

17   identify any specific business opportunity or reference any specific customer.  Rather,

18   Orchard hypothesizes that it would have gained the business of some unidentified,

19   "prospective" customer at some undetermined point in the future, but for Defendants'

20   alleged conduct.  (*Id.*).  Such speculative allegations of lost potential business opportunity

21   are insufficient to support a cause of action for TIPEA, and courts routinely dismiss them.

22   *See, e.g.*, *DocMagic*, 745 F. Supp. 2d at 1144 (dismissing TIPEA claim because plaintiff

23   did not plead facts sufficient to satisfy all elements of the claim for even one customer);

24   *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (finding

25   inadequate plaintiff's "conclusory" allegations that it was "harmed because its ongoing

26   business and economic relationships with Customers have been disrupted"); *Bio-Med.*

27   *Research, Ltd. v. Thane Int'l, Inc.*, 249 F. App'x 539, 542 (9th Cir. 2007) (affirming

28   dismissal because TIPEA claim "does not . . . protect mere 'potential' relationships"); *TPS*

1    *Utilicom Serv., Inc. v. AT & T Corp.*, 223 F. Supp. 2d 1089, 1106 (C.D. Cal. 2002) ("An

2    allegation of interference with a *potential* customer is too speculative to state a claim for

3    [TIPEA].") (emphasis in original); *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.

4    Supp. 1303, 1312 (N.D. Cal. 1997) (dismissing TIPEA claim because complaint contained

5    "no facts in support of its contention that it lost potential customers").

6          In addition, Plaintiff fails to demonstrate that Defendants' interference was

7    "wrongful by some legal measure other than the fact of the interference itself." *Korea*

8    *Supply*, 29 Cal. 4th at 1153.  "The tort of [TIPEA] is not intended to punish . . . commercial

9    entities for their choice of commercial relationships or their pursuit of commercial

10   objectives, unless their interference amounts to independently actionable conduct." *Id.* at

11   1158-59; *see also Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 832

12   (9th Cir. 2001); *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th

13   1249, 1256 (Cal. Ct. App. 2002) ("One may compete for an advantageous economic

14   relationship with a third party as long as one does not act improperly or illegally.").  An act

15   is independently wrongful if it is unlawful—that is, if it is proscribed by some

16   constitutional, statutory, regulatory, common law, or other determinable legal standard.

17   *Korea Supply*, 29 Cal. 4th at 1159.

18         Here, Orchard fails to plead facts establishing the independent wrongfulness

19   requirement.  As explained above, Makita's and METCo's decisions to alter their

20   distribution strategy and cease dealing with Orchard are not independently "unlawful."  To

21   hold otherwise would restrict the well-established rights of parties to commercial

22   transactions to choose their business partners.   Thus, Orchard's claim fails as a matter of

23   law and must be dismissed.

24         **F.      Plaintiffs' advertising claims should be dismissed.**

25         The SAC alleges claims for false advertising under the Lanham Act, 15 U.S.C. §

26   1125(a)(1)(B), and the California False Advertising Law, Cal. Bus. & Prof. Code § 17500.

27   The elements of a false advertising claim under the Lanham Act are:

28

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  Similarly, the elements for a false advertising claim under Section 17500 are: (1) a statement, (2) made by the disseminator in connection with the sale or disposition of goods or services, (3) which is untrue or misleading, and (4) which statement is known, or which by the exercise of reasonable care should be known, to be true or misleading."  CAL. ANTITRUST AND UNFAIR COMPETITION LAW REVISED EDITION, § 17:04 (2012) (citing Cal. Bus. & Prof. Code § 17500).

The false advertising claims are grounded in fraud, and they therefore must be pleaded with particularity.  *EcoDisc Tech. v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1077, 1084-85 (C.D. Cal. 2010) (dismissing Lanham Act claim for failure to plead with particularity); *Epicor Software Corp. v. Alt. Tech. Solutions, Inc.*, No. SACV 13-00448-CJC (RNBx), 2013 WL 2382262, *4 (C.D. Cal. May 9, 2013) (Lanham Act and Section 17500 claims must be pleaded with particularity).  Orchard must plead the "'time, place, and specific content of the false representations.'"  *EcoDisc*, 711 F. Supp. 2d at 1085 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  Orchard identifies four "example" price comparison advertisements for which it provides some but not all of these details and provides no detail regarding other advertisements that it alleges it occurred "again and again."  (SAC ¶¶ 245-250.)  For the four advertisements it does identify, Orchard does not allege where the advertisements were made (for example, a specific store location) or when they were made.  As Orchard has failed to plead the nature of the advertisements with sufficient particularity, both false advertising claims should be dismissed.

1    In addition, for the Lanham Act claim, Orchard must plead facts demonstrating that

2  the defendant caused its allegedly false statement to enter interstate commerce. *Southland*

3  *Sod Farms*, 108 F.3d at 1139. Orchard's allegations relate only to statements made by

4  Home Depot on in-store displays at store locations in Southern California. FAC ¶ 245.

5  Orchard fails to connect these ads within Home Depot's California stores to interstate

6  commerce. *Compare, e.g., Leatherman Tool Grp., Inc. v. Coast Cutlery Co.*, 823 F. Supp.

7  2d 1150, 1156 (D. Or. 2011) (interstate commerce requirement met where statements

8  appeared on defendant's website, product packaging, catalogs, and product itself, and

9  defendant had distribution network of more than 10,000 retail outlets in U.S. and presence

10  in about 30 foreign countries). The Lanham Act claim should therefore be dismissed.

11    **G.    Leave to amend should not be granted.**

12    The Court should grant the motion to dismiss as to the first seven claims without

13  leave to amend. The Court may dismiss without leave to amend where it is clear that the

14  complaint "could not be saved by any amendment." *Steckman v. Hart Brewing, Inc.*, 143

15  F.3d 1293, 1296 (9th Cir. 1998) (citation omitted). The Court provided Orchard with clear

16  guidance regarding the deficiencies of its claims in its Order on Defendants' motion to

17  dismiss the Complaint, and Orchard failed to cure them. Because Orchard has made it plain

18  that it cannot allege additional facts to cure the defects in its SAC, Orchard should not be

19  granted leave to amend. Doing so would impose needless burden and cost.

20  **IV.    CONCLUSION**

21    For the foregoing reasons, Defendants respectfully submit that their motion to

22  dismiss should be granted.

23    Dated: June 28, 2013.

24

25

26

27

28

1                PILLSBURY WINTHROP SHAW PITTMAN LLP
                      ROXANE A. POLIDORA (CA Bar No. 135972)

2                ANDREW D. LANPHERE (CA Bar No. 191479)
                      LINDSAY A. LUTZ (CA Bar No. 254442)

3                Four Embarcadero Center, 22nd Floor
                      San Francisco, CA  94111

4                Telephone: (415) 983-1000
                      Facsimile: (415) 983-1200

5

6                By: _____/s/ Roxane A. Polidora_____
                            Roxane A. Polidora

7
                Attorneys for Defendant

8                HOME DEPOT USA, INC.

9                REINHART BOERNER VAN DEURENs.c.
                      Scott W. Hansen (*pro hac vice*)

10               Jennifer L. Naeger (*pro hac vice*)
                      1000 North Water Street, Suite 1700

11               Milwaukee, WI 53202
                      Telephone: (414) 298-1000

12               Facsimile: (414) 298-8097

13
                By: _____/s/ Scott W. Hansen_____

14                            Scott W. Hansen

15
                Attorneys for Defendant

16               MILWAUKEE ELECTRIC TOOL
                      CORPORATION

17
                BRYAN CAVE LLP

18               ROBERT L. STOLEBARGER (CA Bar No. 230495)
                      560 Mission Street, 25th Floor

19               San Francisco, CA  94105-2994
                      Telephone:  (415) 268-2000

20               Facsimile:  (415) 268-1999

21               By: _____/s/ Robert L. Stolebarger_____
                            Robert L. Stolebarger

22
                Attorneys for Defendant MAKITA U.S.A., INC.

23

24

25
ATTESTATION: Pursuant to Local Rule 5-1(i)(3), the filer hereby attests that concurrence

26
in the filing of the document has been obtained from each of the other signatories.

27

28